UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KENNETH LENK,<br><br>    Plaintiff,<br><br>v.<br><br>MONOLITHIC POWER SYSTEMS, INC.,<br><br>    Defendant. | Case No. 20-cv-08094-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; AND DISMISSING ACTION WITH PREJUDICE**<br><br>[Re: ECF 27] |

    This is the fourth lawsuit that *pro se* Plaintiff Kenneth Lenk ("Lenk") has filed against his former employer, Defendant Monolithic Power Systems, Inc. ("MPS") in the eight years since his separation from employment in 2013. As discussed in more detail below, all three of Lenk's prior suits against MPS were dismissed with prejudice. Lenk filed unsuccessful appeals in the first two cases. He did not file an appeal in the third case, choosing instead to file the present lawsuit.

    MPS moves to dismiss the operative first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6). The Court previously vacated the hearing on the motion and submitted the matter for decision without oral argument. *See* Order Vacating Hearing, ECF 31.

    For the reasons discussed below, the motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND and the action is DISMISSED WITH PREJUDICE.

**I.  BACKGROUND**

    Lenk has alleged in all four lawsuits that he began working for MPS as a marketing director in 2012; MPS began harassing him, discriminating against him, and subjecting him to adverse employment actions in early 2013; and he was constructively discharged in March 2013. Lenk's first two lawsuits asserted claims based on MPS's alleged discrimination, harassment, and

ultimate constructive discharge of him. In his third lawsuit, Lenk reasserted claims based on his alleged constructive discharge and related conduct, and he added new claims based on MPS's post-discharge litigation conduct in defending against *Lenk I* and *Lenk II*. In this, his fourth lawsuit, Lenk once again asserts claims based on his alleged constructive discharge and MPS's post-discharge litigation conduct, and he adds new claims that of post-discharge "blacklisting" by MPS.

In light of Lenk's insistence on reasserting claims previously dismissed by the Court, the doctrines of res judicata and collateral estoppel were central to this Court's prior dismissals of *Lenk II* and *Lenk III*, and are central to MPS's current motion to dismiss *Lenk IV*. To inform its discussion of those doctrines in this order, the Court summarizes the claims asserted in Lenk's prior and current actions.

*Lenk I, Case No. 15-cv-01148-NC*

In March 2015, Lenk filed suit against MPS ("*Lenk I*") in the United Stated District Court for the Northern District of California ("Northern District"). He asserted two federal claims for violation of the Fair Labor Standards Act ("FLSA") and the Americans with Disabilities Act ("ADA"), and nine state law claims for breach of contract, constructive discharge, and violations of the California Labor Code. Magistrate Judge Nathanael M. Cousins, to whom the case was assigned, dismissed all claims under Rule 12(b)(6). Judge Cousins determined that Lenk had not alleged that he engaged in protected activity under the FLSA and had not alleged a disability under the ADA. *See Lenk v. Monolithic Power Sys., Inc.*, No. 15-CV-01148-NC, 2015 WL 6152475, at *3-4 (N.D. Cal. Oct. 20, 2015). Judge Cousins also found that Lenk had failed to state a claim for breach of contract, constructive discharge, or violation of the California Labor Code. *See Lenk v. Monolithic Power Sys., Inc.*, No. 15-CV-01148 NC, 2016 WL 1258862, at *3 (N.D. Cal. Mar. 31, 2016); *Lenk v. Monolithic Power Sys., Inc.*, No. 15-CV-01148-NC, 2015 WL 7429498, at *9 (N.D. Cal. Nov. 23, 2015). The United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") dismissed Lenk's appeal as frivolous.

*Lenk II, Case No. 16-cv-02625-BLF*

Lenk filed a second suit against MPS ("*Lenk II*") in the Northern District in May 2016,

again alleging constructive discharge and related conduct. The second suit also named Lenk's former supervisor at MPS, Maurice Sciammas ("Sciammas"). The case initially was assigned to Judge Cousins, but it was reassigned to the undersigned judge after Lenk declined to consent to magistrate judge jurisdiction.

Lenk claimed that MPS and Sciammas had discriminated against him in violation of 42 U.S.C. § 1981, and that they had retaliated against him in violation of Title VII. This Court dismissed those claims without leave to amend as barred by the doctrine of res judicata. *See Lenk v. Monolithic Power Sys., Inc.*, No. 16-CV-02625-BLF, 2017 WL 1832198, at *5 (N.D. Cal. May 8, 2017). The Ninth Circuit affirmed, concluding that "[t]he district court properly dismissed Lenk's action on the basis of claim preclusion because the claims were raised or could have been raised in a prior action between the parties or those in privity with them, and the prior action resulted in a final judgment on the merits." *Lenk v. Monolithic Power Sys., Inc.*, 754 F. App'x 554, 556 (9th Cir. 2018).

*Lenk III, Case No. 19-cv-03791-BLF*

In March 2018, Lenk filed his third suit against MPS ("*Lenk III*") in the United States District Court for the District of Arizona. He also sued Sciammas and Sacks, Ricketts & Case LLP, the law firm that represented MPS and Sciammas *Lenk I* and *Lenk II*. The Arizona district court transferred the case to the Northern District, where it ultimately was assigned to this Court. Lenk asserted federal claims under Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985, and a state law emotional distress claim. *See Lenk v. Monolithic Power Sys. Inc.*, No. 19-CV-03791-BLF, 2020 WL 619846, at *3 (N.D. Cal. Feb. 10, 2020). Those claims were based in part on the alleged constructive discharge that had been litigated in *Lenk I* and *Lenk II*, and in part on new allegations that MPS engaged in post-discharge retaliatory conduct by defending itself against *Lenk I* and *Lenk II*. *See id.* at *6.

This Court found that the doctrine of collateral estoppel precluded Lenk from asserting that he was wrongfully constructively discharged, as that issue actually was litigated in *Lenk I* and *Lenk II*. *See Lenk*, 2020 WL 619846, at *7. With respect to the defendants' alleged post-discharge retaliation, the Court found that the conduct described by Lenk consisted of ordinary

3

1    litigation conduct in defense of *Lenk I* and *Lenk II* and thus could not form the basis of a Title VII
2    retaliation claim.  *See id.* at *8.  The Court also found that Lenk had not alleged that he is a
3    member of a racial minority as required under § 1981; had not allege state action as required under
4    § 1983; and had not alleged that he belongs to a protected class as required under § 1985(3).  *See*
5    *id.* at 9-10.  Finally, the Court determined that Lenk's emotional distress claims based on post-
6    discharge conduct were barred by California's litigation privilege, Cal. Civ. Code § 47(b), and did
7    not allege sufficient facts.  *See id.* at *10-11.

   *Lenk IV (present case),Case No. 20-cv-08094-BLF*

   Lenk filed the present action against MPS in the Northern District on November 16, 2020.
*See* Compl., ECF 1.  He filed the operative FAC on March 8, 2021, asserting eleven claims:
(1) retaliation under Title VII; (2) civil rights violation under 42 U.S.C. § 1981[1]; (3) retaliation
under California's Fair Employment and Housing Act ("FEHA"); (4) harassment under FEHA; (5)
hostile work environment under FEHA; (6) blacklisting under California state law; (7) blacklisting
under Washington state law; (8) blacklisting under Arizona state law; (9) violation of California's
Unfair Competition Law ("UCL"); (10) intentional interference with prospective economic
relations; and (11) unjust enrichment.

   In support of these claims, Lenk once again alleges that MPS constructively discharged
him and that MPS engaged in retaliatory and harassing behavior when it defended itself against
Lenk's suits.  Lenk also adds new allegations that MPS "blacklisted" Lenk after he left the
company by transmitting negative job references to On Semiconductor.

**II.   LEGAL STANDARD**

   "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a
claim upon which relief can be granted tests the legal sufficiency of a claim."  *Conservation Force*
*v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted).
While a complaint need not contain detailed factual allegations, it "must contain sufficient factual

---

[1] The caption of Claim 2 indicates that it is brought under 42 U.S.C. §§ 1981 and 1981a.  Section 1981a does not create an independent claim, but merely provides an additional remedy for unlawful intentional discrimination prohibited under other statutes.  *See Pimentel v. Orloff*, No. C-08-0249 MMC, 2008 WL 3876173, at *2 (N.D. Cal. Aug. 19, 2008).

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. DISCUSSION

MPS moves to dismiss the FAC on numerous grounds. First, MPS argues that Claims 1 and 2 are barred by the *Noerr-Pennington* doctrine. Second, MPS contends that all claims are barred by the doctrines of res judicata and collateral estoppel. Third, MPS asserts that all claims fail to allege sufficient facts. Fourth, MPS asserts that Claims 4 and 5 are barred by California's litigation privilege, Cal. Civ. Code § 47(b). Fifth, MPS contends that Claims 2-11 are time-barred. In opposition, Lenk argues that his claims are not barred and that he has alleged them with adequate specificity.

Before addressing the parties' arguments, the Court addresses two procedural matters. First, MPS requests judicial notice of administrative charges filed by Lenk with the EEOC and DFEH. *See* RNJ, ECF 28. That request is GRANTED. *See Coleman v. Boeing Co.*, No. C13-1788RSL, 2014 WL 266333, at *1 n.1 (W.D. Wash. Jan. 23, 2014) (court may take judicial notice of documents filed with and by the EEOC as matters of public record). Second, MPS asks the Court to disregard Lenk's opposition, as it was filed late. The Court will consider the late-filed opposition in the exercise of its discretion, in light of Lenk's *pro se* status.

Turning to the substance of MPS's motion, the Court finds that all of Lenk's claims are subject to dismissal for failure to state a claim and that leave to amend is not warranted. The Court first discusses the deficiencies of the FAC, and then it explains why dismissal without leave to amend is appropriate under the applicable legal standard.

#### A. Claim 1 – Retaliation under Title VII

Claim 1 is for retaliation under Title VII. To establish a claim of retaliation under Title VII, "a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action." *Poland v. Chertoff*, 494 F.3d 1174, 1179-

80 (9th Cir. 2007). Lenk alleges that he engaged in protected activity when he filed a 2012 lawsuit against his former employer, Freescale Semiconductor, while employed by MPS. FAC ¶¶ 26, 241. MPS allegedly retaliated against Lenk for engaging in that protected activity by subjecting him to adverse employment actions that ultimately resulted in his constructive discharge. *Id*. ¶ 242.

After Lenk separated from employment, MPS allegedly continued its retaliatory conduct by blacklisting him. FAC ¶ 244. Lenk provides no factual allegations to support his assertion of blacklisting. He speculates that MPS gave negative employment references to On Semiconductor in 2013 and 2019. *Id*. ¶¶ 200, 205. Lenk reasons that MPS must have given him negative references because he was not hired by On Semiconductor even though he was exceptionally qualified. *Id*. Lenk alleges that he did not learn of MPS's blacklisting conduct until June 2019 when he did not get the second position for which he applied at On Semiconductor. *Id*. ¶ 224.

MPS argues that Claim 1 is barred by the *Noerr-Pennington* doctrine and the doctrines of res judicata and collateral estoppel, and that it fails to state a claim upon which relief may be granted.

### 1. *Noerr-Pennington* Doctrine

"The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (quoting U.S. Const. amend. I). "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Id*. The doctrine has been held "to apply to defensive pleadings, because asking a court to deny one's opponent's petition is also a form of petition." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005).

MPS points out that the body of the FAC contains numerous allegations regarding MPS's conduct in defending itself against Lenk's prior lawsuits, and that those allegations are incorporated into Claim 1. *See* FAC ¶¶ 131-167; 213-217; 240. On that basis, MPS argues that Claims 1 is barred by the *Noerr-Pennington* doctrine. It is unclear whether Claim 1 is based in part on MPS's litigation conduct in prior actions. To the extent that it is, the Court agrees that the

*Noerr-Pennington* doctrine bars the claim.

### 2. Res Judicata

The term res judicata "comprises two distinct doctrines regarding the preclusive effect of prior litigation." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020). "The first is issue preclusion (sometimes called collateral estoppel), which precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Id*. "The second doctrine is claim preclusion (sometimes itself called res judicata)." *Id*. "Unlike issue preclusion, claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action – even if they were not actually litigated." *Id*.

"Res judicata applies when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Id*. (quotation marks and citation omitted). "The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (internal quotation marks and citation omitted).

Lenk asserted Title VII retaliation claims in both *Lenk II* and *Lenk III*. The claims were dismissed with prejudice in both cases, satisfying the second element of res judicata, and in both cases Lenk sued MPS, satisfying the third element. Only the first element, identity of claims, is at issue. If Lenk's current retaliation claim were limited to his alleged constructive discharge and MPS's post-discharge litigation conduct, the claim clearly would be subject to the res judicata bar.

However, the current claim also is based on new allegations that MPS blacklisted Lenk by conveying negative references to On Semiconductor in 2013 and 2019. Lenk correctly states that the res judicata bar does not apply to claims that could not have been litigated in the earlier suit. Lenk sought leave to amend his pleading in *Lenk III* to add allegations regarding MPS's alleged transmittal of negative references, but this Court determined that the new allegations appeared to be unrelated to the allegations of MPS's post-discharge litigation conduct. *See Lenk*, 2020 WL 619846, at *13. The Court also expressed the concern that a claim based on negative references might be premature in light of a pending EEOC inquiry into the transmittal of negative references.

*See id.* Having denied Lenk's motion for leave to amend, the Court cannot in fairness say that Lenk could have raised claims based on alleged negative references in *Lenk III*. The Court therefore concludes that the current Title VII claim may not be dismissed on res judicata grounds.

### 3. **Collateral Estoppel**

"To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

Lenk argues that none of the issues underpinning his current Title VII claim were actually and necessarily decided in his prior suits. He is incorrect. Lenk's current Title VII claim is based largely on his alleged constructive discharge and MPS's alleged post-discharge litigation conduct. In *Lenk III*, this Court expressly determined that Lenk was precluded from asserting that he was constructively discharged, and that Lenk's allegations regarding MPS's litigation conduct failed to state a claim. *See Lenk*, 2020 WL 619846, at *7-8. Those determinations were necessary to the judgment in *Lenk III*. *See id.*

The only aspect of Lenk's current Title VII claim not barred by collateral estoppel is Lenk's assertion that MPS blacklisted him after he left the company. However, as discussed below, Lenk's blacklisting allegations are insufficient to state a claim

### 4. **Failure to Allege Sufficient Facts**

MPS argues that Lenk's current Title VII claim fails to allege sufficient facts to survive a Rule 12(b)(6) motion. Again, the elements of a Title VII claim are: "(1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action." *Poland*, 494 F.3d at 1179-80.

With respect MPS's alleged blacklisting of him, Lenk alleges the following. He engaged in protected activity when he filed a lawsuit against his prior employer, Freescale Semiconductor, in December 2012. *See* FAC ¶¶ 26, 242. He left MPS in March 2013. *See id.* ¶ 197. Shortly

after leaving MPS, he applied for a position at On Semiconductor. *See id.* In May 2013, On Semiconductor informed Lenk that he had not been selected for the position, that there were "alternate candidates," and that On Semiconductor would "leave the door open for future openings." *Id.* ¶ 198. Six years later, in June 2019, Lenk applied for another position at On Semiconductor. *See id.* ¶ 181. Lenk was not selected for that position either. *See id.* ¶ 191. Lenk asserts that MPS must have blacklisted him, because he was "exceptionally qualified" and a "perfect match," and had "an excellent reference" for the 2019 position. *See id.* ¶¶ 185, 187, 205.

Those allegations are insufficient to state a Title VII claim. Lenk has alleged that he engaged in protected activity in 2012 by filing a lawsuit against Freescale Semiconductor, satisfying the first element. However, his allegations that MPS provided negative job references after he left the company do not satisfy the second element. In certain circumstances, a plaintiff may seek relief for retaliatory conduct after the end of the employment relationship. *See Hashimoto v. Dalton,* 118 F.3d 671, 675 (9th Cir. 1997). However, even assuming that such circumstances encompass providing negative references, Lenk offers only pure speculation that MPS transmitted negative references to On Semiconductor. Lenk's subjective belief that MPS must have done so because he otherwise would have been selected for the positions does not satisfy his burden to plead *facts* giving rise to a plausible claim. Moreover, the third element is not satisfied, because Lenk has not alleged facts suggesting a causal connection between his 2012 suit against Freescale Semiconductor and MPS's alleged negative references in 2013 and 2019. The 2013 reference allegedly was transmitted months after the asserted protected conduct, and the 2019 reference allegedly was transmitted six years afterward. Lenk has failed to allege facts giving rise to a reasonable inference of a Title VII violation.

The motion to dismiss is GRANTED as to Claim 1.

### B. Claim 2 – Race Discrimination under § 1981

Claim 2 is asserted under 42 U.S.C. § 1981. That statute provides a vehicle for redressing intentional racial discrimination. *Mercer v. Sw. Airlines Co.*, No. 13-CV-05057-MEJ, 2014 WL 4681788, at *7 (N.D. Cal. Sept. 19, 2014). MPS contends that this claim is barred by res judicata. The Court agrees. Lenk asserted a § 1981 claim against MPS in *Lenk III*, and that claim was

1  dismissed by this Court on the ground that Lenk had not alleged he is a member of a racial
2  minority or that he was subjected to discrimination on the basis of race.  *Lenk*, 2020 WL 619846,
3  at *9.  The first element of res judicata, identity of claims, is satisfied because both the prior claim
4  and the current claim arise out of the same transactional nucleus of facts – MPS's allegedly
5  discriminatory treatment of Lenk.  The second element of res judicata is satisfied because the
6  dismissal of *Lenk III* was a final adjudication on the merits.  And the third element of res judicata
7  is satisfied because Lenk asserted the § 1981 claim against MPS in both suits.

Because Claim 2 clearly is barred by res judicata, the Court need not address the parties' arguments regarding the adequacy of Lenk's factual allegations and whether the claim is time-barred.

The motion to dismiss is GRANTED as to Claim 2.

### C.  Claims 3, 4, and 5 – Retaliation and Harassment under FEHA

Claims 3, 4, and 5 recast Lenk's prior allegations of constructive discharge, race discrimination, and retaliatory litigation conduct as new claims under FEHA.  All of these claims are subject to dismissal on collateral estoppel and other grounds.

#### 1.  Claim 3 – Retaliation

Claim 3 is for retaliation under FEHA, which prohibits retaliation against a person who opposed a forbidden practice, filed a complaint, testified, or assisted in a proceeding under FEHA.  *See* Cal. Gov't Code § 12940(h).  The elements of a claim for retaliation under FEHA are:  (1) the plaintiff engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) a causal link existed between the protected activity and the employer's action.  *Moore v. Regents of Univ. of California*, 248 Cal. App. 4th 216, 244 (2016).  These are precisely the same elements as a claim for retaliation under Title VII, and Lenk's FEHA claim fails for the same reason as his Title VII claim, discussed above.

#### 2.  Claim 4 – Harassment

Claim 4 is for harassment under FEHA, which makes it unlawful to harass an employee because of "because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender

10

identity, gender expression, age, sexual orientation, or veteran or military status." Cal. Gov't Code § 12940(j)(1). "The elements of a FEHA harassment claim are: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment because of being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Babot v. Equilon Enterprises LLC*, No. 18-CV-04802-DMR, 2020 WL 3833282, at *5 (N.D. Cal. July 8, 2020) (internal quotation marks and citation omitted).

Lenk alleges that after he left the company, MPS harassed him by having Sacks, Ricketts & Case LLP – the law firm that represented MPS in *Lenk I* and *Lenk II* – engage in obstructive and fraudulent litigation conduct. *See* FAC ¶¶ 319-331. Lenk also alleges that MPS harassed him by "interfering with his employment opportunity at On Semiconductor." *See id.* ¶ 328. Lenk suggests that MPS engaged in this conduct because he is Caucasian, and MPS favored Asian employees. *See id.* ¶¶ 9, 265.

MPS argues that this claim is barred by res judicata and collateral estoppel; Lenk does not allege that he is a member of a protected class; all the allegations relate to conduct occurring after Lenk left the company and so could not have affected Lenk's conditions of employment; the claim is barred by California's litigation privilege, Cal. Civ. Code § 47(b); and the claim is time-barred.

The Court agrees that the claim is barred by collateral estoppel to the extent it is based on MPS's litigation conduct. This Court previously determined in *Lenk III* that the conduct in question consisted of ordinary litigation conduct in defense of *Lenk I* and *Lenk II*. *See Lenk*, 2020 WL 619846, at *7-8. Moreover, to the extent the claim is based on MPS's litigation conduct, it also is barred by California's litigation privilege, Cal. Civ. Code § 47(b), which "grants absolute immunity from tort liability for communications made in relation to judicial proceedings." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) (internal quotation marks and citation omitted).

To the extent the harassment claim is based on MPS's alleged transmittal of negative references to On Semiconductor, that conduct allegedly occurred in 2013 and 2019, after Lenk left the company. Accordingly, the conduct could not have affected the conditions of Lenk's

11

1  employment at MPS.  Moreover, as discussed herein, Lenk has not alleged any facts showing that
2  MPS provided a negative reference.  Further, he has not alleged any facts showing that such a
3  reference was motivated by his race.

4  Finally, the claim is time-barred.  In order to pursue a FEHA harassment claim, Lenk was
5  required exhaust administrative remedies.  *See Wilson v. City of Fresno*, No. 1:19-cv-01658-DAD-
6  BAM, 2020 WL 5366302, at *4 (E.D. Cal. Sept. 8, 2020).  "An employee exhausts administrative
7  remedies by filing a complaint with DFEH within one year of the occurrence of the allegedly
8  unlawful act and obtaining a notice of the right to sue from DFEH."  *Id*.  Lenk alleges that MPS's
9  campaign of harassment against him began at latest in 2013, when he allegedly was constructively
10 discharged.  He alleges that MPS transmitted negative references to On Semiconductor in May
11 2013 and June 2019.  *See* FAC ¶¶ 193, 198.  Lenk filed an administrative complaint with the
12 DFEH on October 9, 2020, more than a year after the alleged June 2019 reference.  *See* RJN Exh.
13 B, ECF 28-2.  Accordingly, Lenk's DFEH complaint was untimely.

### 3. Claim 5 – Harassment Causing Hostile Work Environment

15 Claim 5, for harassment causing a hostile work environment, is asserted under California
16 Government Code § 12923.  Section 12923 "is a statement of legislative findings and purpose and
17 does not itself give rise to a cause of action under FEHA."  *Fradkin v. Wunderlich-Malec Eng'g*
18 *Inc.*, No. CV 19-6492-DMG (SKX), 2019 WL 7940670, at *2 n.3 (C.D. Cal. Nov. 5, 2019).  The
19 provision clarifies that a single incident may be enough to create a hostile work environment in the
20 context of a workplace harassment claim.  See Cal. Gov't Code § 12923(b).  Accordingly, Claim 5
21 is governed by the same pleading requirements as Claim 4, repeated here for the sake of
22 convenience:  "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to
23 unwelcome harassment because of being a member of that group; and (3) the harassment was
24 sufficiently severe or pervasive to alter the conditions of employment and create an abusive
25 working environment."  *Babot*, 2020 WL 3833282, at *5 (internal quotation marks and citation
26 omitted).

27 In Claim 5, Lenk alleges that he was subjected to workplace harassment since his filing of
28 the complaint against Freescale Semiconductor.  *See* FAC ¶¶ 333-339.  The harassment allegedly

United States District Court
Northern District of California

1  resulted in Lenk's constructive discharge and continued during MPS's litigation of Lenk's prior
2  suits and affected his ability to obtain other employment. *See id.* This claim is subject to
3  dismissal for all of the same reasons discussed above with respect to Claim 4.

4  The motion to dismiss is GRANTED as to Claims 3, 4, and 5.

### D.   Claims 6, 7, and 8 – Blacklisting

Claims 6, 7, and 8 are for blacklisting under California law, Washington law, and Arizona law, respectively.

#### 1.   California Law

California law provides that: "Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor." Cal. Lab. Code § 1050. While § 1050 is a criminal statute, an aggrieved person may bring a civil suit for violation of § 1050. *See* Cal. Lab. Code § 1054.

In Claim 6, Lenk alleges that MPS violated § 1050 by providing negative references to On Semiconductor in 2013 and 2019 with "malice and ill will." FAC ¶¶ 343-349. Lenk alleges that MPS also provided negative information to unnamed other companies as well. *See id.* As discussed above, however, Lenk has not alleged any facts suggesting that MPS transmitted negative references to On Semiconductor or anyone else. Lenk's theory is that MPS must have given him negative references because he was not hired by On Semiconductor even though he was exceptionally qualified. Lenk's bare speculation as to MPS's conduct, and motivation for such conduct, is insufficient to state a claim for blacklisting.

Lenk points to paragraph 355 of the FAC as support for his blacklisting claim. That paragraph alleges as follows: "The timing of MPS' HR Manager Allnut pinging Lenk's Linked-In account supports a strong causal linkage (likely the same day) of the negative comments. Lenk did not apply to any other companies during this time period, and there was certainly no reason for Allnut to randomly ping Lenk's account at this time (which was and would have been harassment." FAC ¶ 355. The Court understands Lenk to be asserting that an inference of

blacklisting may be drawn from the fact that an MPS employee "pinged" Lenk's Linked-In account during a time period in which Lenk applied for a job that he did not get. However, Lenk fails to explain how the pinging of his Linked-In account relates to the alleged blacklisting.

The Court finds that Lenk has failed to state a claim for blacklisting under California law.

### 2. Washington Law

Lenk contends that Washington law applies because MPS's executive office is located in Kirkland, Washington. *See* FAC ¶ 364. Under Washington's criminal blacklisting statute, it is unlawful to "wilfully and maliciously, send or deliver . . . any paper, letter or writing . . . for the purpose of preventing any other person from obtaining employment." RCW 49.44.010. The parties dispute whether violation of this statute gives rise to a private right of action. MPS contends that it does not, relying on *Neely v. Boeing Co.*, No. C16-1791 RAJ, 2018 WL 2216093 (W.D. Wash. May 15, 2018). In *Neely*, the district court found that the plaintiff had "fail[ed] to establish that RCW 49.44.010 provides for a private cause of action." *See id.* at *6. In *Alvarez v. Target Corp.*, No. 13-CV-0150-TOR, 2013 WL 4734123, at *5 (E.D. Wash. July 10, 2013), however, the district court stated that "Washington courts have recently determined that the blacklisting statute is a sufficient basis for a civil cause of action."

Even assuming that a private right of action lies under RCW 49.44.010, Lenk has not alleged facts sufficient to state a plausible claim that MPS sent or delivered a "paper, letter or writing . . . for the purpose of preventing" him from obtaining employment.

The Court finds that Lenk has failed to state a blacklisting claim under Washington law.

### 3. Arizona Law

Lenk asserts that Arizona law applies because On Semiconductor is headquartered in Phoenix, Arizona. *See* FAC ¶¶ 372-73. "Arizona defines blacklisting as 'any understanding or agreement whereby the names of any person . . . shall be spoken, written, printed or implied for the purpose of being communicated or transmitted *between two or more employers* . . . whereby the laborer is prevented or prohibited from engaging in a useful occupation." *Pollitt v. Casa Grande Union High Sch. Dist. No. 82*, No. CV-13-00383-TUC-RM, 2015 WL 13215019, at *2 (D. Ariz. June 11, 2015) (quoting A.R.S. § 23-1361(A). Allegations that a less qualified person

14

was chosen for a position over the plaintiff are not sufficient to state a claim under the statute. *See id.*

As discussed above, Lenk has not alleged facts sufficient to make out a plausible claim that MPS communicated with On Semiconductor, or that such communication has prevented Lenk from engaging in a useful occupation. Lenk's bare speculation that MPS must have given him a negative reference because he was not hired is insufficient to state a claim.

The motion to dismiss is GRANTED as to Claims 6, 7, and 8. Having concluded that these claims are subject to dismissal on the grounds discussed above, the Court need not address the parties' arguments regarding the applicable statutes of limitations.

### E. Claim 9 – UCL

Claim 9 is for violation of California's UCL. California Business & Professions Code § 17200 prohibits an individual or entity from engaging in an "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

Lenk alleges that "Defendant violated several State and Federal laws as pled, thus allowing for this § 17200 derivative law claim." FAC ¶ 379. In particular, Lenk identifies the following offenses as bases for his UCL claim: age discrimination, race discrimination, wage manipulation, stealing sensitive and confidential competitive information, and blacklisting. *See id.* ¶¶ 380-387. Lenk is collaterally estopped from proceeding on his discrimination theories. Moreover, any claim based on conduct occurring before Lenk left the company in 2013 is barred by the applicable four year statute of limitations, as Lenk did not file this suit until 2020. *See* Cal. Bus. & Prof. Code § 17208 (establishing four-year statute of limitations for § 17200 claims). Lenk asserts that he did not discover MPS's blacklisting conduct until 2019. However, as discussed herein, Lenk has not alleged facts sufficient to show that MPS blacklisted him.

The motion to dismiss is GRANTED as to Claim 9.

### F. Claim 10 – Intentional Interference with Prospective Economic Advantage

Claim 10 is for intentional interference with prospective economic advantage. The

elements of that claim are: "'(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.'" *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).

Lenk alleges that he "entered into a business expectancy relationship" with On Semiconductor, as it was reasonable to expect that he had a high probability of employment at On Semiconductor. *See* FAC ¶¶ 400-401. He alleges further that MPS interfered with that relationship by blacklisting him. *See id.* ¶¶ 402-403. As discussed herein, Lenk has not alleged facts showing that MPS blacklisted him.

The motion to dismiss is GRANTED as to Claim 10.

### G. Claim 11 – Unjust Enrichment

Claim 11 is for unjust enrichment. "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation marks and citation omitted).

Lenk alleges that he provided MPS with new product definitions, business strategies, and other work product. *See* FAC ¶¶ 426-428. He also alleges that MPS's illegal activity, including alleged constructive discharge, harassment, retaliation, and race discrimination, rendered his employment contract ineffective. *See id.* ¶ 431. As a result, Lenk asserts, he is entitled to pursue a quasi-contract restitution claim against MPS for unjust enrichment. *See id.* Under the doctrine of collateral estoppel, Lenk is precluded from asserting that he was constructively discharged, harassed, retaliated, or subjected to race discrimination. Accordingly, Lenk cannot pursue an unjust enrichment claim on these bases. Moreover, the claim is barred by the applicable three year statute of limitations, as all of the conduct for which Lenk seeks restitution occurred before he left the company in 2013 and this suit was not filed until 2020. *See Est. of Brown v. Bank of New*

16

1   *York*, No. ED CV 18-01973 SJO, 2018 WL 10435665, at *4 (C.D. Cal. Dec. 3, 2018) ("The

2   restitution and unjust enrichment claims are subject to a statute of limitations of three years under

3   California law.").

4   The motion to dismiss is GRANTED as to Claim 11.

### H.     Leave to Amend

Having determined that all claims of the FAC are subject to dismissal, the Court must consider whether to grant Lenk leave to amend. In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

The Court finds no undue delay (factor 1). However, Lenk's insistence on reasserting claims based on his alleged constructive discharge in the face of three adverse judgments suggests that he is acting in bad faith (factor 2). Lenk amended his original complaint as of right in response to MPS's motion to dismiss, but he failed the cure the deficiencies identified by MPS in its motion (factor 3). Forcing MPS to continue litigating Lenk's meritless claims has and will impose undue prejudice on MPS (factor 4). And finally, there is no indication on this record that Lenk could cure the deficiencies of FAC (factor 5). Lenk's claims largely are barred by collateral estoppel, California's litigation privilege, and applicable statutes of limitations, and those deficiencies could not be cured by amendment. The only claims that conceivably could be cured by amendment are some of those arising from MPS's alleged blacklisting conduct. However, the FAC is devoid of any facts that would support claims based on the alleged blacklisting, and Lenk has not provided any basis to believe that he might be able to allege a viable claim for blacklisting if he were given further leave to amend.

After weighing these factors, and carefully considering the record, the Court finds that leave to amend is not warranted. Accordingly, all of Lenk's claims will be DISMISSED WITHOUT LEAVE TO AMEND.

### I. MPS's Request for Attorneys' Fees and Costs

MPS requests that the Court award it attorneys' fees and costs. MPS may file a motion for attorneys' fees and costs within thirty days after issuance of this order. Such motion is limited to ten pages in length. Any opposition also is limited to ten pages in length, and any reply is limited to five pages in length. All written text, including footnotes and quotations, shall be no less than 12-point type and shall be double-spaced.

### IV. ORDER

(1) The motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to all claims.

(2) The action is DISMISSED WITH PREJUDICE.

(3) MPS may file a motion for attorneys' fees and costs within thirty days after issuance of this order.

Dated: November 10, 2021

BETH LABSON FREEMAN
United States District Judge